# Dellinger's Appeal.

1. A husband about 1825 received his wife's share of her father's estate; there was evidence before the auditor that frequently until his death in 1869, he declared he held the money for her children to be paid after his death. The auditor found that he held the money in trust for the children; the Orphans' Court confirmed the report. There being no " plain mistake " in the finding, *Held*, that the Supreme Court must accept the trust as the auditor found.

2. The husband of one of the children and the wife of the other were competent witnesses for them.

3. The exception in Act of April 15th 1869 does not embrace husband and wife testifying for each other.

May 6th 1872.   Before READ, AGNEW and SHARSWOOD, JJ.

Appeal from the decree of the Orphans' Court of *Lancaster county*: Of May Term 1872, No. 4.

In the estate of Jacob Dellinger, deceased.

The decedent died about May 1st 1869; he had been married more than forty years previously, to his first wife, who died shortly after their marriage, leaving two children, Mary Ann, afterwards married to Benjamin Wertz, and John Dellinger. Shortly afterwards the decedent married a second wife, Levina, who, with two children whom he had by her, viz., Barbara the wife of James R. Wertz, and Abraham W. Dellinger survived him. He left a will distributing his real and personal estate amongst his wife and children in the manner set forth in it, and appointed George S. Mann his executor.

The executor having filed his account, D. G. Eshleman was appointed auditor to distribute the balance in the accountant's hands.

Before the auditor, Mary Ann Wertz and John Dellinger, children of the first wife, claimed the sum of $480, which they alleged the decedent received as their mother's share of her father's estate, and never converted to his own use, but held in trust for them as her children.

Jacob Strawbridge testified for the claimants that in a conversation with the decedent, during the life of his first wife, decedent said that he had " married a woman who had between $400 and $500, which was advanced in property for the children, * * * after their death the money was to fall to children. * * * The money of his wife he loaned to Abraham

Miller, now dead. * * *  I had another conversation with him the year before he died about this money, and he repeated the same thing that he had said before.  He said, after his death this money was to go to the children of his first wife. * * *  He said more than a dozen times that the money he got by his first wife was to go to her children.  He told me that money was put into the manor property. * * *  His first wife died after he bought that property.

Mary Dellinger, wife of John Dellinger, was offered and objected to as incompetent, being the wife of one of the claimants; she testified that "the widow of decedent, after his death, said that the manor property was bought with his first wife's money. * * * Pap always said that it was to remain in the property until his death, and then John and Mary were to have what belonged to their mother, $480." * * *

Benjamin Wertz, husband of Mary Ann, one of the first wife's children (also objected to), testified that he heard the decedent tell his wife "that there were $480 in the place that John and Mary were to have out first; it was to be taken out after his death."

On behalf of the widow and children, the children Abraham W. Dellinger and Barbara Wertz were called, and under objection to their competency, testified to declarations of decedent, that he had expended the money received by his first wife on her account, and that it was not in the land.

Several witnesses were examined, who contradicted Jacob Strawbridge's statement.

The auditor in his report said:—

"The evidence in this case clearly establishes it as an exception to the general rule, that the choses in action and money of the wife, received by the husband prior to the passage of the Act of 1848, belong to him absolutely. * * *  The testimony of Benjamin Wertz, the husband of Mary Ann, and Mary Dellinger, the wife of John Dellinger, is taken into consideration on the ground that a husband and wife can testify in favor of each other, but not against."

After examining and comparing the testimony, particularly as to the corroboration and contradiction, he further said:—

"We have therefore the fact established, that the testator, soon after his first marriage, and of course not long after he received the money of his first wife, declared that he had between four and five hundred dollars of her money, which was put in the property that he then owned for her children, that after he had sold that property he declared that he had loaned that money to an individual till he could buy again; and that when he purchased another property he invested the same money therein, where it was to remain till after his death, and then it was to go to the children of his first wife.  That he repeated these declarations in almost

the same words to different persons from time to time, for a term of about forty years down to a short time before his death. The auditor is of the opinion that these declarations, although none of them were shown to have been made at the time when he received the money, are clearly evincive of the intent of the testator at the moment of reduction to possession, and that they repel the presumption of personal acquisition by the testator, and establish the relation of trustee of the money for the children of the first wife. * * *

"But it is alleged that if the testator did create a trust of this fund, he could at any time revoke it, and did revoke it by his will. If the auditor is correct in his conclusions, the testator did create a trust of this fund for the children of his first wife. A trust once effectually created by parol cannot subsequently be extinguished, revoked or altered by the party creating it, any more than a more formal assurance. He disposes of his own property, says nothing about trusts or trust property, and revokes all other wills, legacies and bequests by him before that time made. It may be remarked that while the claimants are bound to prove their case fully and completely, so as to bring themselves within an exception to a general rule of property, they are not to be held to anything further. They are not to be visited with the effects of any sympathy for the testator's legatees and devisees, who are only volunteers, and therefore bound by testator's acts and declarations as effectually as he himself would be if living. The trust having been established, the burden of proof is thrown upon the volunteers to lift it from the estate.

"The auditor therefore awards to John Dellinger and Mary Ann Wertz, the sum of four hundred and eighty dollars, with interest from the time of the death of the testator—say May 1st 1869." * *

The widow and her children filed exceptions to the report and admission of Mary Dellinger and Benjamin Wertz as witnesses.

The court (Long, P. J.), after reviewing the testimony, as well as discussing the law of the case, confirmed the report of the auditor.

Levina Dellinger and Barbara Wertz appealed to the Supreme Court, and assigned for error:—

1. The confirmation of the auditor's report.

2. Not deciding that Mary Dellinger and Benjamin Wertz were incompetent witnesses.

*F. S. Pyfer* and *G. M. Kline*, for appellants.—Previously to the Act of April 11th 1848, the possession by the husband of his wife's choses in action was primâ facie evidence that he had converted them to his own use, and to repel this presumption evidence of the clearest kind was required of declarations made by the husband at the time he received his wife's money, or afterwards, that

he did not convert it to his own use: Gray's Estate, 1 Barr 327 ; Gochenaur's Estate, 11 Harris 460 ; Johnston *v.* Johnston's Administrators, 7 Casey 450. A parol trust cannot be created by loose declarations : Hill on Trustees 93. Declarations must be made - contemporaneously with the act of disposition : Morey *v.* Herrick, 6 Harris 123. The claimants could not be witnesses : Breneman's Estate, 15 P. F. Smith 298.

*N. E. Slaymaker* and *N. Ellmaker*, for appellees, cited as to the trust : Hind's Estate, 5 Wharton 142 ; Skinner's Appeal, 5 Barr 263 ; Ex parte Pye, 18 Vesey 149 ; Young's Estate, 15 P. F. Smith 101. As to the competency of the witnesses : Yeager *v.* Weaver, 14 P. F. Smith 425.

The opinion of the court was delivered, May 16th 1872, by

AGNEW, J.—This case falls within the general rule that requires great weight to be given to the report of an auditor when confirmed by the court below. The question of a trust of the money Jacob Dellinger received, through his marriage with his first wife, for her children, depended on the credibility of the witness Jacob Strawbridge. Evidence was given to contradict as well as to corroborate his testimony. In such a case the auditor, who has seen the witnesses, has heard them examined and compared their oral statement, is much more capable of judging of the credibility of the testimony than we can possibly be. Therefore, when his report is confirmed by the court below, we ought not to set it aside except for plain mistake. It is not possible, on the evidence before us, to assert that such plain mistake exists. The trust therefore must be accepted as he has found it to be.

But it is contended that the wife of one of the litigants, and the husband of another, who were examined as witnesses, were incompetent to testify ; and as these witnesses were heard in corroboration of Strawbridge's testimony, the conclusion of the auditor was drawn in part from an illegal source. The testimony of the litigants themselves was excluded as falling within the second clause of the proviso to the 1st section of the Act of 15th April 1869, which declares that the act shall not apply to actions by or against executors, administrators or guardians. But the *witnesses,* as wife and husband, had no personal interest in this controversy, and were not parties to it. They were not to be excluded unless they fall within the first clause of the proviso prohibiting a husband or wife from testifying against each other. The witnesses being neither parties nor interested, their exclusion could rest only on the ground of policy. But this policy is removed by the enactment which declares that no policy of law shall exclude a person from being a witness in any civil proceeding, while the exception to the enactment does not embrace a husband and wife

[Dellinger's Appeal.]

called to testify for each other. The first clause of the proviso, therefore, brings them within the force of the maxim, *expressio unius est exclusio alterius.* The second clause of the proviso evidently applies to parties or interested persons, and not to those who had at law been excluded from policy alone. The witnesses not being parties to the issue in controversy, and not being interested, were therefore competent.

Appeal dismissed, and decree affirmed with costs.